`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00582-MSK-MEH

CUNA MUTUAL LIFE INSURANCE COMPANY,

    Plaintiff,

vs.

FRANK A. APODACA, JR.; and SUSANA CRUZ,

    Defendants.

## RECOMMENDATION ON MOTION FOR PAYMENT OF FUNDS DEPOSITED WITH COURT

The parties settled this case on June 26, 2006. The settlement included one term under which a handwriting expert would decide whether the signature on a change-of-beneficiary form was that of Frank A. Apodaca Sr. or not. If the expert concluded that it was Mr. Apodaca Sr.'s signature, Mr. Apodaca Jr. would receive the proceeds of a CUNA Mutual Life Insurance Company policy. If the expert concluded that the signature was not Mr. Apodaca Sr.'s, the money would go to Ms. Cruz. If the expert could not make a conclusion, the money would be split evenly. The settlement agreement stated as follows:

    7.    If the Opinion concludes that the signature is that of the Decedent, the remaining Proceeds shall be paid to Apodaca.
    8.    If the Opinion concludes that the signature is not that of the Decedent, the remaining Proceeds shall be paid to Cruz.
    9.    If the Handwriting Expert is unable to determine whether or not the signature is that of the Decedent, the remaining Proceeds shall be split equally between Cruz and Apodaca.

The parties agreed to be bound by the decision of the handwriting expert.

The handwriting expert concluded that the signature was "very probably" that of Mr.

Apodaca Sr. Mr. Apodaca Jr. now moves to have the CUNA funds (which were deposited with the Court) distributed to him (Docket #52); Ms. Cruz opposes the motion. A hearing was held on September 27, 2006, at which the Court received exhibits and heard arguments of the parties.

The handwriting expert, Darla McCarley-Celentano, compared known writings of Mr. Apodaca Sr. with the signature on the change-of-beneficiary form. In coming to her conclusion, she used a nine-point opinion standard created by the American Society of Testing and Materials (ASTM).[1] The ASTM's nine levels of likelihood as to whether the handwriting is that of the proposed writer are as follows:

1. Identification
2. Very (or Strongly) Probable
3. Probable
4. Indications
5. No Conclusion
6. Indications Did Not
7. Probably Did Not
8. Very Probably Did Not
9. Elimination

According to the exhibits submitted by the parties, which included the ASTM standards, "Very Probable," the conclusion reached here, is defined as follows: "The evidence is very persuasive, yet some critical feature or quality is missing so that identification is not in order; however, the examiner is virtually certain that the same individual wrote the questioned and known writings."

---

[1] For a brief discussion of this standard and its limitations, see *United States v. Prime*, 431 F.3d 1147, 1153-54 (9th Cir. 2005).

The expert spent 13.5 hours studying the known writings and the signature at issue here in reaching her conclusion. The issue before the Court is whether Ms. McCarley-Celentano "concluded" (the word used in the parties' settlement agreement) that the signature was that of Mr. Apodaca Sr. The Court finds that she did.

It appears that the nine-level ASTM standard assumes that levels 1-4 are a "conclusion" that the proposed writer did sign the document, while levels 6-9 are a "conclusion" that he/she did not, based on the use of the term "No Conclusion" in number 5. This Court would not go so far. For example, for level 4, "Indications," the definition is as follows: "The evidence is weak, but has a few features that agree with the known writing. The evidence suggests, but falls considerably short of a positive conclusion." The Court would not permit such a finding to rise to the legal level of a "conclusion." However, this Court's research establishes that nearly all the courts that have considered a conclusion of "very probably" or "strong probability" have determined this to be a conclusion, by the handwriting expert, that the writing is that of the proposed subject. *United States v. Hall*, 905 F.2d 959, 963 (6th Cir. 1990) (Kennedy, J., concurring) ("The statute under which defendant was convicted makes it a crime to mail a letter threatening the President or Vice President of the United States. The handwriting expert testified that 'it's a strong probability which is virtually certain that he [defendant] wrote it.'"); *United States v. Starzecpyzel*, 880 F. Supp. 1027 (S.D.N.Y. 1995) (allowing a "very probably" opinion in sustaining a criminal conviction); *State v. Folsom*, 118 Wash. App. 1077, 2003 WL 22391028, *10 (Wash. App. 2003) ("To prove that Folsom authored both halves, the State called a handwriting expert who compared Folsom's writing exemplars and the disputed portion of the letter. The expert concluded '[t]hat the writer of this exemplar, Mr. Folsom, is very probably the writer of this questioned note.' . . . This was sufficient authentication under ER 901(b)(3)."); *Williams v. State*, 60 P.3d 151, 163 (Wyo. 2002) (finding that the state's

handwriting expert properly authenticated certain letters using a "strong probability" standard).

Without determining how many levels of the ASTM standard satisfy the inquiry of whether a "conclusion" has been rendered as a matter of law and contract interpretation, the Court finds that at least levels 1 and 2 are "conclusions."

Further, to address some points that were (and perhaps could have been) raised by Ms. Cruz, this Court does not have the jurisdiction to determine whether Mr. Apodaca Jr. filled out all the written portions (save the signature) of the change-of-beneficiary form and, by inference, committed a fraud on Ms. Cruz by having his father sign the form. The parties settled all claims and left only the issue of the identity of the signature outstanding. That is the only matter before the Court. Further, the Court has no jurisdiction to determine whether the use of a handwriting expert is sufficiently sound science to render a handwriting conclusion as a matter of law. The parties have stipulated to the use of this procedure, and their agreement will be honored by the Court. Finally, Ms. Cruz was concerned that Ms. McCarley-Celentano did not have sufficient documents to perform her job. Specifically, Ms. Cruz believed that a blank change-of-beneficiary form should have been provided to the expert, as well as the original form used by Ms. Apodaca Sr. (only a copy was available from CUNA). The expert made her conclusion within the limits of the documents provided to her. Under the ASTM guidelines, if she believed that the evidence provided to her was inadequate to render a conclusion, she could and should have used a level 5 "No Conclusion," which includes situations in which there is a lack of comparable writings.

For the foregoing reasons, the Court RECOMMENDS that Mr. Apodaca Jr.'s Motion for Payment of Funds Deposited with Court [Filed August 4, 2006; Docket #52] be **granted** and that the funds remaining from those deposited with the Court on July 18, 2006, be paid to Defendant Frank A. Apodaca, Jr. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of

this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[2]

Dated at Denver, Colorado this 29th day of September, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[2] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).